## THE PEOPLE v. JOSEPH FAY.

*Homicide—Evidence held insufficient to put respondent on trial.*

In this case it is held that the evidence was insufficient to put the respondent on trial for aiding, abetting, and counseling the killing of Bishop, by his co-respondent Dashner, and that the respondent should have been discharged.

*Error to Menominee.* (Grant, J.) Argued April 24, 1888. Decided May 23, 1888.

Respondent was convicted of murder, and sentenced to State prison for life. Judgment reversed and prisoner discharged. The facts are stated in the opinion.

*B. J. Brown* (*Fairchild & Fairchild,* of counsel), for respondent.

*Moses Taggart,* Attorney General, *R. C. Flannigan,* Prosecuting Attorney, for the people.

SHERWOOD, C. J. Joseph Bishop was killed on August 12, 1886, at the city of Menominee, in the county of Menominee.

The respondent was arrested with Charles Dashner and Armadus Lamie, and all were charged with the crime of murdering him. When informed against in the circuit court, they all pleaded not guilty, and upon their motions separate trials were ordered by the court.

The respondent was tried at the September term of said court, 1886, and convicted of the crime of murder in the first degree. He was sentenced to imprisonment for life. He now brings error. The record contains a bill of exceptions, which states: "The foregoing is all the evidence material to the cause."

Thirteen errors are assigned. The first two are to the effect that the court erred in not instructing the jury to return a verdict for the respondent. These require first attention, and, if well assigned, dispose of the case. The killing was not denied, but the defendant denied that it was done by him, and all complicity in the crime. It was claimed by the people, and conceded by the respondent, that Dashner killed Bishop; and the only question was upon the trial, did Fay aid, abet, and counsel the killing? The evidence of this must consist in both what he said and did, and the circumstances under which he said it and did what was done; and if, upon a careful investigation of the testimony, it should be found it discloses, under any reasonable view that can be taken of it, admitting it all to be true, that the motives and participation of the respondent, appearing from all the testimony against him, were entirely inconsistent with his commission of the crime charged, or of aiding or abetting it, the court should not have allowed the case to go to the jury, but discharged the respondent. After a careful reading and examination of the testimony in this record, we all think this course should have been taken in this case, and the respondent discharged at the circuit.

In criminal cases, courts have a highly responsible duty to perform in conducting the proceedings taken against a person charged with capital crime; and, while the interests of the people require that "no guilty man should be allowed to escape," the humanity and morality of the law are inexorable in requiring the greatest circumspection and utmost vigilance on the part of the court to see to it that no innocent man is

allowed to suffer. All doubts are to be resolved in favor of innocence; and this charitable as well as humane principle of the law applies to, and is as binding upon, courts in the discharge of their duties as upon jurors.

It is not our intention to bring under review in this opinion the testimony in the case. All of it that is important is contained in the record, and we shall content ourselves with a brief statement of the most that can be claimed for it in the direction of showing complicity of the respondent in any manner with the crime charged against him; and it will readily be seen that it does not rise to the dignity or plane of evidence competent to be submitted to a jury for the purpose of allowing them to pass upon the guilt of the respondent.

The city of Menominee is located on Menominee river. Menekaune is situated on the other side of the river, and nearly opposite, in the state of Wisconsin. Lamie kept a house of ill fame in Menekaune. About a week before the killing, Bishop went from Menominee, where he resided, to Lamie's place, in Menekaune, where the two had some difficulty, and Lamie drove Bishop from his premises, using threatening language, accompanied by demonstrations of violence; he exhibiting a pistol at the time. Lamie, fearing an arrest, fled, with his wife, across the river, into Menominee. Fay boarded at a saloon in Menominee, and lived near Dashner's and he and Lamie and Dashner had been acquainted with each other several years, and they had all visited at Lamie's place.

Lamie was anxious to drive Bishop out of the city, and away from the vicinity. He did not want to be arrested, and was fearful that Bishop would cause his arrest if he went back to Menekaune. There was testimony tending to show that Lamie had some idea of hiring Bishop to leave and go away; and that Bishop asked $30 to do so; and that Lamie was not willing to give that amount, and planned to whip him, and in that way scare and drive him out of the place.

Lamie, for this purpose, seems to have taken Dashner into his confidence, and to have secured him to do the job. From the testimony appearing, it would seem very doubtful whether any serious injury was intended to be inflicted upon Bishop even by Lamie or Dashner. Be that as it may, there is nothing in the case that we have been able to discover connecting the respondent with the intended injury to Mr. Bishop, except that he heard the conversation of the other parties who were to participate in the affair, and that he went out with them to see the fight.

We do not think such testimony sufficient to be submitted to a jury under instructions from the court which would allow them to find therefrom that the party charged was guilty of the crime of murder, if the person attacked in the fight was killed. The testimony is not to the effect that the respondent conspired with the guilty party to commit the crime, or that he aided and abetted the killing, and it was error to submit the testimony to the jury upon any such theory.

The judgment must be reversed, and the prisoner discharged.

CHAMPLIN and MORSE, JJ., concurred. CAMPBELL, J., did not sit.